UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE AVERY, | No. 2:21-cv-01229-EFB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| CHARLES RICHEY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983. Defendant seeks dismissal of the case, arguing that a settlement agreed to by plaintiff in a prior action bars this action, that plaintiff's request for injunctive relief is barred by the applicable statute of limitations, and that the doctrine of qualified immunity bars plaintiff's damages claims. For the reasons that follow, the court finds that the motion should be denied.

**I.   Background**

Plaintiff is incarcerated at R.J. Donovan Correctional Facility. ECF No. 1 at 7. He sues Charles Richey, an employee of the California Department of Corrections and Rehabilitation ("CDCR") Division of Adult Institutions Religious Oversight Unit, and Kathleen Allison, the director of CDCR, for refusing to allow him to construct a sweat lodge using donated materials. *Id.* at 16-31. Plaintiff describes himself as "a sourcerer [sic] who practices the black arts of Witchcraft," an "advocate for Wicca, Satanism, and Odinism," and "a devoute [sic] Pagan." *Id.*

1

at 18-19.  According to plaintiff, Pagans use sweat lodges for "rites of passage, visionary rituals, spiritual cleaning, meditation, and initiation rites." *Id.* at 19.  He argues that defendants' refusal of his request for the sweat lodge violates his right to freely exercise his religion under the First Amendment to the U.S. Constitution and his right to equal protection under the Fourteenth Amendment (because Native American inmates are allowed a sweat lodge). *Id.* at 16, 27.  Plaintiff seeks an order compelling defendants to allow plaintiff and other Pagan inmates to erect a sweat lodge and to install a water line to the Pagan religious grounds for use in the sweat lodge (among other things).  *Id.* at 31-33.  Plaintiff also seeks $20,000 in compensatory damages and $20,000 in punitive damages.  *Id.* at 32.

      This is not plaintiff's first federal lawsuit alleging that prison officials have denied him religious accommodations to which he is entitled under federal law.  In 2013, plaintiff sued a variety of correctional officials (including defendant Allison), alleging that their refusal to provide him with a fire pit, a water line, a place to cultivate herbs, and a fence in an outdoor area designated for Pagan ritual use violated the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act.  ECF No. 12-1 (plaintiff's complaint in *Avery v. Paramo, et al.*, S.D. Cal. Case No. 3:13-cv-02261-BTM-DHB, hereinafter *Avery I*).  Plaintiff alleged that the fire pit and water line were needed by Wiccan inmates to practice "herbalore, bonfire rituals, fire scrying, fire smooring, pyromancy ritual fire dances which are a part of sympathetic Magick practice, hearth fire rituals, and destruction of items which must be ritually destroyed by fire."  *Id.* at 23.  *See also id.* at 31.  (Plaintiff sought the fence simply to secure the area from trespass or misuse by non-Pagan inmates.  *Id.* at 32.)  The *Avery I* complaint contains no mention of a sweat lodge (or similar structure) or sweat lodge rituals.

      The parties stipulated to dismissal with prejudice of *Avery I* on November 3, 2016 after reaching a settlement.  *Id.* at 103.  According to the copy of the settlement agreement provided to the court by defendants, the contract concerned "the claims alleged in the Complaint, including any rights to appeal, and that concern in any way the allegations of the Complaint."[1]  *Id.* at 106.

---

[1] Defendants request judicial notice of a copy of the *Avery I* settlement agreement (along with various documents from the court docket in that action and another case filed by plaintiff), in

2

By its terms, the agreement is governed by California law. *Id.* at 108. It provides,

> It is the intention of the parties in signing this Agreement that it shall be effective as a full and final accord and satisfaction and release from all claims asserted in the Complaint. By signing this Agreement, Plaintiff releases CDCR, Defendants, whether named or unnamed and whether served or unserved, and any other past or current CDCR employees from all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the Complaint.

*Id.* at 107. The settlement agreement from *Avery I* is central to one of the arguments proffered by defendants in their motion to dismiss the instant case.

**II.     The Motion to Dismiss**

A. *Legal Standards Governing Motions to Dismiss*

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984). In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true (and any reasonable inference supported by the facts). *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

/////

---

support of their motion to dismiss. ECF No. 12-1. The summary of the agreement is provided for context only; the court discusses the propriety of judicial notice of the agreement below.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

B. *Analysis*

Defendants assert three grounds for dismissal, which the court will address in the order presented: (1) plaintiff released the claims he asserts in this action by signing the *Avery I* settlement agreement; (2) plaintiff's claims for equitable relief lie outside the applicable limitations period; and (3) defendants should be granted qualified immunity from plaintiff's damages claims.

The *Avery I* Release. As an initial matter, the court must determine whether it can, on a motion to dismiss, consider the *Avery I* settlement agreement, as it is a document outside the pleadings. Defendants seek judicial notice of the agreement, along with several documents filed on the court docket in *Avery I*[2]; the agreement itself was not filed in court. Under Federal Rule of Evidence 201(b),

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> (1) is generally known within the trial court's territorial jurisdiction; or
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Some district courts in the Ninth Circuit have declined to judicially notice settlement agreements that have not been filed in any court (and thus are not part of any public record). *Cejas v. Brown*, No. 18-cv-00543-WQH (JLB). 2019 U.S. Dist. LEXIS 7283, at *11-12 (S.D. Cal. Jan. 15, 2019) (collecting cases). Others have held that a court may consider an unfiled settlement agreement at the motion to dismiss stage under the "incorporation by reference" doctrine (which allows judicial notice of documents referenced in a complaint) where the agreement is somehow integral to

---

[2] The court grants defendants' request for judicial notice of the documents filed on the docket in *Avery I*.

4

plaintiff's claims (for example, it would bar the claims) and its authenticity is not disputed – even where the complaint makes no mention of the agreement. *Advanced Cleanup Techs., Inc. v. BP America Inc.*, No. 2:14-cv-09033-CAS(AJWx), 2015 U.S. Dist. LEXIS 139322, at *3 n.2 (C.D. Cal. Oct. 9, 2015).

The court finds that it strains the incorporation by reference doctrine to conclude that a complaint that contains no explicit reference to a document incorporates that document by reference simply because the document establishes that the claims asserted in the complaint are barred. This interpretation of the doctrine rests on circular reasoning – the court can use the outside evidence for which judicial notice is sought to determine whether judicial notice is appropriate (i.e., if a settlement agreement shows plaintiff's claims are barred, it can be judicially noticed to then hold that the claims are barred).

Moreover, the propriety of judicial notice is, by the explicit language of Rule 201, a simple inquiry – it is reserved for those instances in which a fact is obvious to all or easily established by resort to trustworthy sources (like a court docket). The accuracy and authenticity of the settlement agreement provided by defendants falls within neither of these categories. Accordingly, the court finds that judicial notice of the settlement agreement is inappropriate. For that reason, defendants' motion to dismiss the case as barred by that agreement should be denied (without prejudice to its reassertion in a later stage of the case).

<u>The Statute of Limitations</u>. In cases brought in federal court under § 1983, such as this one, the court applies the forum state's limitations period for personal injury actions. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1287 (9th Cir. 2017) (citing California Code of Civil Procedure § 335.1). State law also governs the tolling of the limitations period. *Soto v. Unknown Sweetman*, 882 F.3d 865, 871 (9th Cir. 2018). In California, the limitations period is tolled during administrative proceedings if the exhaustion of the administrative remedy is a prerequisite to filing suit. *Addison v. State*, 21 Cal. 3d 313, 318 (1978).

/////
/////
/////

Nonetheless, *accrual* of a cause of action brought pursuant to § 1983 (i.e., the date upon which the limitations period begins to run) is governed by federal, not state, law. *Klein*, 865 F.3d at 1278. Under federal law, a claim accrues when the plaintiff knows of – or should know of – the injury that is the basis of the suit. *Id.*

Defendants argue that the pleadings and some court documents (that the court has judicially noticed, see note 2, *supra*) show that plaintiff's claims for equitable relief are barred by the limitations period. To rule on this argument, the court must know the date upon which plaintiff learned that officials would not provide him with a sweat lodge, the date on which he filed a grievance, the date on which the grievance was exhausted, and the date on which plaintiff filed this action.[3]

Defendants have provided the court with a copy of plaintiff's "Motion to Request a Stay Pending Exhaustion of Admin Remedies to Simular [sic] Claims that May Be Consolidated" in *Avery v. Beard*, S.D. Cal. Case No. 3:16-cv-00699-BTM-RNB. ECF No. 12-1 at 111-16. In that motion, which was filed on November 17, 2016, plaintiff informed the court that he was "in the process of exhausting the denial of plaintiff's request for a sweat lodge to be erected within the standardized outdoor religious grounds[.]" *Id.* On January 20, 2017, plaintiff rescinded the motion to stay in a filing in which he stated that the "admin remedy has become deficiently filed and cannot be reprocessed without starting over." *Id.* at 120.

---

[3] Defendants argue that plaintiff's claim in this case (that he was wrongfully denied a sweat lodge necessary for his Pagan religious practice) is the same as his claim in *Avery I* (that he was wrongfully denied a fire pit and water line necessary for his Pagan religious practice), and thus the claim accrued on the date that plaintiff learned that prison officials would not provide the fire pit and water line. But while a fire pit and water line are necessary to create a sweat lodge, plaintiff sought those items previously not for the purpose of creating a sweat lodge, but instead to create a fire pit and herb garden that have apparently discrete uses in plaintiff's religious practice from a sweat lodge. *Compare* ECF 12-1 at 22-23 (plaintiff's complaint in *Avery I*, describing the need for "a fire pit, water, a place to safely and securely cultivate herbs for the practice of herbalore, bon fire rituals, fire scrying, fire smooring, pyromancy ritual fire dances ..., hearth fire rituals, and destruction of items which must be ritually destroyed by fire") *with* ECF No. 1 at 19 (plaintiff's complaint in this action, describing need for a sweat lodge to perform "rites of passage, visionary rituals, spiritual cleaning, meditation, and initiation rites"). Accordingly, the court will determine the beginning of the limitations period with reference to officials' responses to plaintiff's request for a sweat lodge.

     Plaintiff's complaint sheds further light on the time it took to exhaust his claim. He alleges that, since 2012, prison officials have required inmates to propose requested religious accommodations first to a local religious review committee at the individual institutional level. ECF No. 1 at 10. The local committee then forwards its recommendation regarding the request to CDCR's Division of Adult Institutions Statewide Religious Review Committee for final review and disposition of the request. *Id.* However, that entity refused to respond to plaintiff's proposals. *Id.* Instead, plaintiff was told to use the general grievance process available at his prison. *Id.* at 11. He submitted a grievance regarding the denial of his request for a sweat lodge on December 16, 2018, and it was denied at the first level of review on January 23, 2019. *Id.* The second level reviewer also denied the grievance, on March 11, 2019. *Id.* Plaintiff submitted the grievance to the final level of review, which informed him on August 29, 2019 that it had not reviewed the grievance within the applicable time limits and thus the grievance was deemed exhausted. *Id.*

     Thus, the judicially-noticed court records and the allegations of the complaint show that officials had denied plaintiff's request for a sweat lodge by November 17, 2016 and that he may have begun the process of grieving that denial as of that date, possibly by submitting a proposal for a sweat lodge to his institution's religious review committee. It is not clear whether that entity made a recommendation on the proposal to the statewide committee or not. At some point, perhaps prior to January 20, 2017 (when plaintiff informed a court that "his administrative remedy has become deficiently filed"), plaintiff realized that the Statewide Religious Review Committee was not going to respond to the proposal and was told to submit an ordinary grievance on the issue. Plaintiff did so on December 16, 2018, and the appeal was exhausted on August 29, 29, 2019. This case was filed on July 12, 2021. ECF No. 1.

     Construing these facts, and the inferences that can be drawn from them, in the light most favorable to plaintiff, plaintiff was pursuing some administrative remedy from November 17, 2016, the date defendants advance as the date the limitations period began to run, until August 29, 2019. Under California law, the limitations period must be tolled for this period of time. Because plaintiff filed this lawsuit within two years of August 29, 2019, the facts that the court

7

can currently consider do not show that plaintiff's claims for equitable relief are untimely. Accordingly, defendants' argument that plaintiff's equitable relief claims should be dismissed must be denied (without prejudice to its renewal at a later stage in the proceedings, when the court may consider evidence beyond the pleadings that may shed further light on when plaintiff's claim accrued and the timing of the exhaustion process).

   <u>Qualified Immunity</u>.  Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  In determining whether the doctrine of qualified immunity provides a government officer protection, a court must make two inquiries: 1) whether the facts alleged show that the officer violated a constitutional right; and 2) whether the constitutional right well established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first).  "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. . . . This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018) (internal citations and quotation marks omitted).

   Defense counsel states that he could not locate any precedential authority holding that Pagan inmates have a constitutional right to a sweat lodge.  The court finds that the issue is better framed as the right of an inmate of any sincere faith to use a sweat lodge according to the tenets of that faith, as defendants have provided no reason for differentiating between inmates of different religions.  In 1987, the Ninth Circuit addressed this question in *Allen v. Toombs*, 827 F.2d 563 (9th Cir. 1987).  There, two Native American inmates challenged officials' refusal to allow them to use the sweat lodge while they were housed in disciplinary segregation. *Id.* at 565.

   The court first noted that inmates retain their First Amendment right to free exercise of religion despite their confinement. *Id.* at 566.  That right, however, was subject to limitations called for by legitimate penological concerns. *Id.*  The U.S. Supreme Court had recently held in *Turner v. Safley*, 482 U.S. 78 (1987) that the constitutionality of prison officials' conduct that impacts First Amendment Rights must be determined through consideration of several factors, so

the court applied those factors to the inmates' sweat lodge claim: (1) whether prison officials offered a legitimate, neutral reason for their decision that bore a valid, rational connection to the decision, (2) whether the inmates had alternative ways to exercise the right, (3) the impact of the accommodation on guards, other inmates, and the allocation of resources; and (4) the absence of ready alternatives for satisfying the official's legitimate reason for the decision. *Id.* The court's analysis of these factors according to the specific facts presented by the case led it to conclude that the plaintiffs' free exercise rights had not been violated. *Id.*

In this court's view, *Allen* put prison officials in the Ninth Circuit on notice, at the very least, that denying an inmate access to a sweat lodge would violate the First Amendment's free exercise clause where the denial lacks a legitimate and neutral justification, the inmate has no alternative means to exercise his religious beliefs, allowing the inmate to use a sweat lodge would have little impact on guards, other inmates, and prison resources, and officials have other ways to pursue their penological interests. This analysis is fact-specific, which explains why, as defendants concede, courts have reached different conclusions when presented with claims of entitlement to a sweat lodge.

At this stage of the case, the court has only plaintiff's allegations to go on in determining whether defendants' denial of his request to construct a sweat lodge was reasonable in the face of *Allen*. Plaintiff alleges that all of the *Turner* factors cut in his favor (i.e., that defendants' decision to deny plaintiff's request to construct the law was either plainly incompetent or in willful violation of his free exercise rights). ECF No. 1 at 18-19. Accordingly, the court should decline to grant defendants' request for qualified immunity from plaintiff's free exercise claim at this stage (without prejudice to its renewal in a motion for summary judgment or other further proceedings in which defendant can present evidence showing that, under the *Turner* framework, officials behaved reasonably). *Accord*, *Rouser v White*, 630 F. Supp. 2d 1165, 1201-02 (E.D. Cal. 2009) (denying defendants' request on summary judgment for qualified immunity from Wiccan inmate's free exercise claim for a sweat lodge where defendants had not presented evidence showing that their conduct was reasonable according to the *Turner* factors); *McCarter v. Beard*, No. CV 15-00094-BRO (CWx), 2015 U.S. Dist. LEXIS 200499, at *28 (C.D. Cal. Nov. 9, 2015)

(denying defendants' request in motion to dismiss for qualified immunity from Native American inmate's free exercise claim to conduct sweat lodge ceremonies where plaintiff had adequately alleged that defendants' conduct violated his clearly established right to conduct the ceremonies).[4]

Plaintiff also had a well-established equal protection right to "'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts'" at all times relevant to the case. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). Whether it would have been clear to a reasonable official that denying plaintiff's request to construct and use a sweat lodge violated that right depends on facts not yet before the court (i.e., whether plaintiff retained a reasonable opportunity to practice his particular brand of Paganism comparable to the opportunities enjoyed by inmates of other beliefs). Plaintiff alleges that, despite minimal burdens, officials unreasonably refuse to allow him to construct a sweat lodge but have provided a sweat lodge to Native American inmates. ECF No. 1 at 27-29. Accordingly, the court should deny defendants' request for qualified immunity from plaintiff's equal protection claim at this time, without prejudice to its renewal at a later stage of the case.

/////

/////

---

[4] The court recognizes that others have found that the differing conclusions reached by many jurists on claims of constitutional entitlement to a sweat lodge support a granting qualified immunity to defendants on all such claims. *E.g., Buckles v. Crowe*, No. CV 18-00084-BLG-SPW-TJC, 2021 U.S. Dist. LEXIS 59908, at *10-15 (D. Mont. Feb. 22, 2021) (granting qualified immunity to defendants on inmate's claim of religious entitlement to a sweat lodge because, "Even if it could be found that there is a split of authority on the issue, it would not provide a clearly established right to a sweat lodge, such that only a 'plainly incompetent' official or one 'knowingly violating' the law would fail to recognize that right."); *Farrow v. Stanley*, No. 02-567-PB, 2005 U.S. Dist. LEXIS 24374, at *41-42 (D. N.H. Oct. 20, 2005) (finding that case law regarding whether inmates have a First Amendment right to use a sweat lodge was unsettled and defendants should therefore be granted qualified immunity). *Allen* put prison officials on notice that that the *Turner* factors govern the constitutionality of official decisions to deny sweat lodge access and thus that, where those factors do not support the official's decision, the denial would violate the First Amendment. As discussed above, the different outcomes in free exercise sweat lodge cases is not a result of a lack of a clear rule – *Allen* provided that. These differing outcomes result from the application of the *Turner* factors to the unique facts of each case.

### III. Order and Recommendation

Accordingly, it is hereby ORDERED that the Clerk of the Court randomly assign a United States District Judge to this action.

Further, and for the reasons provided above, it is hereby RECOMMENDED that defendants' November 9, 2021 motion to dismiss (ECF No. 12) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 2, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE